[No. 34452. Department One. March 27, 1958.]

O. W. SINCLAIR, by his Guardian ad Litem Dorothea Sinclair et al., Appellants, v. RECORD PRESS, INC., et al., Respondents.[1]

*Pemberton & Orloff*, for appellants.

*Kern, Dano & Cone*, for respondents.

HUNTER, J.—This is an action to recover damages for personal injuries suffered by O. W. Sinclair, an eighty-year-old pedestrian who was struck by an automobile driven by defendant J. C. Kaynor, while crossing a street, not at a crosswalk, in a residential district.

As a result of the accident, Mr. Sinclair was rendered incompetent, and, therefore, could not participate in the prosecution of this action. The National Bank of Commerce, Yakima Branch, was appointed general guardian of his estate, and Dorothea Sinclair, his wife, was appointed guardian *ad litem* for the purpose of commencing this litigation.

Although Dorothea Sinclair, individually, was joined as a party plaintiff, O. W. Sinclair will be referred to herein as though he were the sole plaintiff (appellant).

Record Press, a corporation, the owner of the automobile, and Fern Kaynor, wife of the driver, were joined as parties defendant, but for the purpose of this appeal, J. C. Kaynor will be referred to as though he were the sole defendant (respondent).

At the close of plaintiff's case, the trial court sustained defendant's challenge to the sufficiency of the evidence and dismissed the action. After plaintiff's motion for a new trial was denied, he appealed to this court.

Appellant urges that the trial court erred (1) in holding that appellant was guilty of contributory negligence, as a matter of law, and that such negligence was a proximate cause of his injuries; (2) in holding, as a matter of law, that the respondent was not negligent; (3) in granting respondent's motion for nonsuit and in entering judgment in accordance therewith; (4) in denying appellant's motion for a new trial; and (5) in excluding evidence of the location of appellant at the time of impact.

At the outset, we will consider whether the trial court erred when it granted the defendant's motion for nonsuit after the plaintiff had completed presenting his evidence.

■ A motion for nonsuit admits the truth of the evidence of the party against whom the motion is made and all inferences that reasonably can be drawn therefrom, and requires that the evidence be interpreted most strongly against the moving party and in the light most favorable to the opposing party. *Phillips v. Department of Labor & Industries,* 49 Wn. (2d) 195, 298 P. (2d) 1117 (1956), and cases cited therein; *Traverso v. Pupo,* 51 Wn. (2d) 149, 316 P. (2d) 462 (1957). Further, in ruling on such a motion, no element of discretion is involved, and the trial court can only grant the same when it can be held, as a matter of law, that there is no evidence or reasonable inference therefrom to sustain a verdict. *Kemalyan v. Henderson,* 45 Wn. (2d) 693, 277 P. (2d) 372 (1954).

With these rules in mind, we will review the appellant's evidence, which reveals the following facts: The accident occurred on October 11, 1954, between ten and eleven o'clock in the morning. The weather was clear and crisp, and the pavement was dry. The place of the accident was on Third street, in the city of Ellensburg, at a point roughly in the middle of the block and some distance from any pedestrian crosswalk. In that area, Third street slopes downhill from east to west at approximately a six per cent grade and is thirty feet wide from curb to curb with no visible center line. Parking is permitted on the north side of the street but prohibited on the south side. The speed limit is twenty-five miles per hour.

On the day in question, Mr. Joseph Fitterer gave the appellant a ride home in his pickup. He parked on the north side of the street about four feet behind the appellant's Cadillac automobile. After a short conversation, the appellant got out of the pickup, stepped to the sidewalk, and walked down the sidewalk past his automobile. Mr. Fitterer prepared to pull away from the curb, but after seeing respondent's car coming from the east, he decided to wait until that car passed. He estimated the speed of respondent's car from twenty to twenty-five miles per hour.

Mr. Fitterer, who was the only eyewitness to the accident, testified that he observed the respondent's car in his rear view mirror about one and one-half car lengths behind his pickup, at which time he saw the appellant in the process of passing the left-front fender of his Cadillac, or two or three feet out in the street. The testimony of Mr. Fitterer is clear, however, that when the respondent's car was twenty feet from the appellant, the appellant was three feet from the left-front fender of the Cadillac. At this time, Fitterer sounded his horn, and the appellant looked up and started running across the path of respondent's oncoming car. The respondent swerved to the left and struck the appellant near the center of the street with the right-front fender of his car. Mr. Fitterer further testified that the left-front fender or portion of respondent's car crossed the center line

in the street. There is no dispute that the appellant suffered very serious injuries as the result of this accident.

■ There is no room for reasonable minds to disagree. The appellant, at the time of his injury, was attempting to cross a street in the middle of a block and was *not within a crosswalk.* He violated the statutory rule which required that he, as a pedestrian, yield the right of way to respondent. This rule is stated in RCW 46.60.250, which provides *inter alia:*

"Every pedestrian crossing a roadway *at a point other than within a marked crosswalk* or within an unmarked crosswalk at an intersection shall yield the right of way to all vehicles upon the roadway." (Italics ours.)

■ This was negligence *per se* and a proximate cause of the appellant's injury as a matter of law. See *Roloff v. Bailey,* 46 Wn. (2d) 358, 281 P. (2d) 462 (1955); *Shiels v. Purfeerst,* 39 Wn. (2d) 252, 235 P. (2d) 161 (1951); *Shelton v. Bennett,* 32 Wn. (2d) 529, 202 P. (2d) 461 (1949). Thus, any question of respondent's negligence, if any, is merely academic, in that the legal effect of the contributory negligence rule precludes recovery by the appellant in any event. *Shiels v. Purfeerst, supra.*

Appellant contends that he had succeeded in getting to, or across, the center line, thereby yielding the right of way to the respondent, and that it was at least a question for the jury as to his position on the roadway when he was struck by the respondent's car. He relies on *Mosso v. E. H. Stanton Co.,* 75 Wash. 220, 134 Pac. 941 (1913); *Rhimer v. Davis,* 126 Wash. 470, 218 Pac. 193 (1923); *Cannon v. City Electric & Fixture Co.,* 158 Wash. 66, 290 Pac. 828 (1930); *Cox v. Kirch,* 12 Wn. (2d) 678, 123 P. (2d) 328 (1942); *Wood v. Copeland Lbr. Co.,* 32 Wn. (2d) 490, 202 P. (2d) 453 (1949).

These cases are not authority for appellant's position under the facts of this case. In none of these cases did we announce a rule that a pedestrian who *races across* the immediate path of an oncoming vehicle traveling within the lawful rate of speed, and who succeeds in reaching or crossing the center of the street prior to being struck by the vehicle,

has yielded the right of way within the contemplation of the above statute.

██ Here, the respondent's car was only twenty feet from the appellant when he became aware of the appellant's intention to cross the street. The appellant then darted across the roadway in front of respondent, thereby creating an emergency which resulted in the collision. In attempting to avoid striking the appellant, the respondent swerved to the left. Whether he used the proper judgment is not a question necessary for determination, since the negligent conduct of the appellant was a proximate cause of this unfortunate culmination of events. His position in the roadway at the time he was struck, under the circumstances of this case, does not negative his failure to yield the right of way.

██ The appellant, however, may recover notwithstanding his contributory negligence if he can successfully invoke the doctrine of last clear chance. This doctrine has been recognized as an exception to the contributory negligence rule. *Shiels v. Purfeerst, supra.*

In *Klouse v. Northern Pac. R. Co.,* 50 Wn. (2d) 432, 312 P. (2d) 647 (1957), the court stated:

"The application of the doctrine to a state of facts disclosed by evidence introduced in a jury trial is a question of law to be determined by the court. *Sarchett v. Fidler,* 37 Wn. (2d) 363, 223 P. (2d) 843; *Stokes v. Johnstone,* 47 Wn. (2d) 323, 287 P. (2d) 472. The last clear chance rule, as applied in Washington, has two phases. In the one, the plaintiff's negligence may continue up to the time of the injury if the defendant actually sees the peril; in the second, the plaintiff's negligence must have terminated or culminated in a situation of peril from which the plaintiff could not by the exercise of reasonable care, extricate himself if the defendant did not actually see the peril, but in the exercise of reasonable care should have seen it. *Coins v. Washington Motor Coach Co.,* 34 Wn. (2d) 1, 208 P. (2d) 143; *Leftridge v. Seattle,* 130 Wash. 541, 228 Pac. 302; *Everest v. Riecken,* 30 Wn. (2d) 683, 193 P. (2d) 353. However, in order to hold a defendant liable under this rule, it must appear that he had a *clear* chance to avoid the accident, not merely a *possible* chance; and a clear chance to avoid an accident in-

volves the element of sufficient time to appreciate the peril of the party unable to extricate himself and to take the necessary steps to avoid injuring him. *Everest v. Riecken, supra.* As this court said in *Steen v. Hedstrom,* 189 Wash. 75, 63 P. (2d) 507, and in *Everest v. Riecken, supra,*

" 'Last clear chance implies thought, appreciation, mental direction, and the lapse of sufficient time to effectually act upon the impulse to save another from injury.' " (Italics ours.)

In *Pasero v. Tacoma Transit Co.,* 35 Wn. (2d) 97, 211 P. (2d) 160 (1949), in applying the doctrine, we said:

"There must be an *appreciable interval of time* intervening between a collision and the moment when the driver of an automobile has knowledge or notice of the danger in which the other party has been placed. *Hartley v. Lasater,* 96 Wash. 407, 165 Pac. 106; *Rettig v. Coca-Cola Bottling Co.,* 22 Wn. (2d) 572, 156 P. (2d) 914; *Shultes v. Halpin, supra.*" (Italics ours.)

In the present case, the respondent was not aware of the appellant's peril until he was twenty feet away, at which time the appellant started to run across the respondent's immediate lane of travel. On redirect examination, Mr. Fitterer testified:

"Q. And when was it from that point that the Kaynor car started turning left over towards the south? A. Well, that happened awful fast, it was all one motion. The last twenty feet in the collision was just a swerve and a bang and that was it. Q. He turned to the left about the same time Mr. Sinclair increased his pace, is that the way? A. Yes, sir. Almost instantly right together."

From this testimony, it is clear that there was *no appreciable interval of time* intervening to avail the respondent the last clear opportunity to avoid the accident; therefore, the doctrine is not applicable.

The appellant's recovery being barred by virtue of his contributory negligence, it is unnecessary to discuss the appellant's remaining assignments of error.

The trial court was correct in granting the respondent's

motion for dismissal at the close of appellant's case. The judgment is affirmed.

HILL, C. J., MALLERY, FINLEY, and OTT, JJ., concur.

---

May 16, 1958. Petition for rehearing denied.